UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 99-CV-2648 (JFB)
_____

DEBRA OSTROSKI,

Plaintiff,

VERSUS

TOWN OF SOUTHOLD,
VINCENT TIRELLI,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER;
KEVIN LYNCH,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER;
RICHARD PERKINS,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER;
TOM BEEBE,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER;
JOSEPH CONWAY, JR.,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER;
NED GRATHOL,
INDIVIDUALLY AND AS A TOWN OF SOUTHOLD POLICE OFFICER,

Defendants.
_____

MEMORANDUM AND ORDER
July 21, 2006
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Debra Ostroski brought this action, alleging claims for violation of her civil rights under 42 U.S.C. § 1983 and pendent claims under state law. Defendants move for summary judgment on all claims. For the reasons stated below, summary judgment is granted for all claims other than plaintiff's claims against the individual officer defendants for malicious prosecution and excessive force under § 1983, and malicious prosecution, assault, and battery under New York law. Because the Court grants summary judgment for the Town of Southold, dismissing plaintiff's claim for municipal liability under § 1983, the Town of Southold is dismissed as a party from this lawsuit.

I. BACKGROUND

The following facts are undisputed unless otherwise indicated. On May 15, 1997, Florence Ostroski called 911 regarding a domestic dispute at her residence between her children, Debra Ostroski, plaintiff, and Butch Ostroski, plaintiff's brother. (*See* Plaintiff's Rule 56.1 Statement of Material Facts ("56.1 Statement"), ¶ 5.) During the call, Florence Ostroski told the 911 operator that plaintiff and her brother were going to retrieve weapons, a gun and a knife, that were located on the premises. (*See* Declaration of Michael P. Biancanello ("Biancanello Aff."), Ex. D; *see also* Plaintiff's 56.1 Statement, ¶ 6; *see also* Defendants' 56.1 Statement, ¶ 4.) After receiving the call, the Town of Southold police department dispatched officers to the Ostroski residence. (*See* Plaintiff's 56.1 Statement, ¶ 5.) A number of officers arrived at the scene, including defendants Vincent Tirelli, Kevin Lynch, Richard Perkins, Ted Beebe and Joseph Conway, Jr.

The events which occurred after the officers arrived at the scene are largely disputed. According to the police report and the testimony of several officers at the plaintiff's subsequent criminal trial, discussed *infra*, Florence Ostroski specifically requested that the officers remove the shotgun that was located in plaintiff's bedroom. (*See* Defendants' 56.1 Statement, ¶ 4; *see also* Biancanello Aff., Exs. E, G at vol. 1., p. 150, 172; vol. 2, p. 38.) Officer Tirelli testified that when he and Officer Perkins attempted to go upstairs and retrieve the guns, plaintiff blocked their path and informed the officers that they were not going to take the guns. (*See id.,* Ex. G at vol. 1, pp. 151-52.) Tirelli and Sergeant Lynch both testified that plaintiff initiated physical contact with Tirelli and Perkins, and then informed plaintiff that she was under arrest. (*See id.,* Ex. G at vol. 1, pp. 152, 213-14; vol. 2, pp. 92-93.) The officers then struggled to subdue plaintiff to the ground, and finally handcuffed her. (*See id.,* Ex. G at vol 2., p. 94.) The officers placed plaintiff in the back seat of the patrol car, and she subsequently kicked out the rear window of the vehicle. (*See* Plaintiff's 56.1 Statement, ¶ 10.)

According to plaintiff's account of the events, after the officers arrived at the scene, they began to engage in a heated verbal exchange, and plaintiff called one of the officers a "pig." (*See* Biancanello Aff., Ex. G., at vol. 3, p. 92.) After the police officers informed her that they were going to remove the guns, she protested the fact that they did not have a warrant. (*See id.*) According to plaintiff, Lynch replied, "I am the Search Warrant." (*Id.*) Both plaintiff and her mother testified that the officers then initiated physical contact. (*See id.,* Ex. G at vol. 2, pp. 139-40; vol. 3, p. 93.) Further, they testified that, after the officers had successfully handcuffed and subdued plaintiff and she was not showing any resistance, the officers kicked her, kneed her in the back, punched her in the back of the head and twisted her neck. (*See id.,* Ex. G. at vol. 2, pp. 141-43; vol. 3, pp. 92-94.) Finally, plaintiff testified that the officers dragged her to the patrol car, and they sealed her inside, with the car's heating system on full blast, which caused her to experience breathing problems. (*See id.,* Ex. G at vol. 3, pp. 94-95.) She requested that the officers turn off the heat, but the officers stood and laughed. (*See id.,* Ex. G at vol. 3, p. 95.) Plaintiff then kicked out the patrol car's rear window, and the officers subsequently shackled her legs. (*See id.,* Ex. G at vol. 3, pp. 95-96.)

As a result of this incident, plaintiff was charged with resisting arrest (N.Y. Penal Law

2

§ 205.30), obstruction of governmental administration (N.Y. Penal Law § 195.05), second degree harassment (N.Y. Penal Law § 240.26[1]), and fourth degree criminal mischief (N.Y. Penal Law § 145.00). Plaintiff faced a jury trial for these charges, and was convicted on November 19, 2002, of the charges of fourth degree criminal mischief and second degree harassment and acquitted of resisting arrest and obstruction of governmental administration. (*See* Biancanello Aff., Ex. F.)

On March 1, 2006, the Supreme Court, Appellate Term, affirmed plaintiff's conviction for second degree harassment. *See People v. Ostroski*, 2006 WL 543067, at *1 (N.Y. Sup. App. Term. Mar. 1, 2006). Plaintiff did not appeal her conviction for fourth degree criminal mischief. *See id.*

Prior to her criminal trial, plaintiff filed the instant civil rights action, pursuant to 42 U.S.C. § 1983, with accompanying state law tort claims, seeking damages against the Town of Southold, as well as the officers that were involved in her arrest. Specifically, plaintiff alleges § 1983 causes of actions against the defendant officers arising under the First, Fourth, Fifth, and Fourteenth Amendments of the Constitution, including claims for false arrest, false imprisonment, malicious prosecution, abuse of process, and violation of plaintiff's right to equal protection under the law. (*See* Compl. ¶¶ 1, 2, 31.) Plaintiff has also raised a § 1983 claim for municipal liability against defendant Town of Southold. (*See id.,* ¶ 35.) Plaintiff's state law claims include assault and battery, false arrest, false imprisonment, malicious prosecution and abuse of process. (*See id.,* ¶¶ 1, 2.) In the instant motion, defendants move for summary judgment on all of plaintiff's claims.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (citation omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (stating that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

III. DISCUSSION

A. Procedural Default Issues

Both parties contend that they are entitled to prevail on the instant motion for summary judgment, based upon an argument that their adversary failed to comply with necessary procedural requirements involved in summary judgment motion practice. Specifically, plaintiff asserts that defendants failed to comply with Local Rule 56.1 in failing to initially include a separate statement of undisputed material facts with numbered paragraphs, and defendants aver that plaintiff failed to comply with Fed. R. Civ. P. 56(e) by failing to attach to its opposition an affirmation of an individual with personal knowledge of the facts that are relevant to this dispute, to demonstrate that admissible evidence exists that depicts disputed issues of material fact. The Court entertains each party's assertion that the other side committed procedural default with regards to the instant motion in turn.

1. Compliance with Local Civil Rule 56.1

Plaintiff argues that defendants' motion for summary judgment should be summarily denied, predicated upon a failure to adhere to the requirements of Local Civil Rule 56.1. According to the relevant part of the Rule, which is applicable in United States District Courts for the Eastern and Southern Districts of New York:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends that there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civil Rule 56.1(a). Specifically, plaintiff decries the fact that defendants did not attach to his notice of motion a separate statement, including a numbered list of material facts for which they contend that there is no genuine issue to be tried. Shortly after plaintiff raised this issue in her own statement pursuant to Local Civil Rule 56.1, defendants submitted a separate statement that complied with the requirements of Local Civil Rule 56.1(a).

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 63, 73 (2d Cir. 2001) (citations omitted); *see, e.g., Gilani v. GNOC Corp.,* No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In exercise of this broad discretion, the Court refrains from denying defendants' motion based upon this technical failure to adhere with Local Civil Rule 56.1 because defendants promptly cured the error once it was brought to their attention, and plaintiffs have not alleged that they suffered any prejudice from the initial defect. *Cf. Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 445 n.1 (S.D.N.Y. 1998) ("Rule 56.1 does not prohibit the consideration of untimely statements, particularly where the admission of the statement will not prejudice an opposing party.") (internal citations omitted); *see also Thaler v. Casella*, 960 F. Supp. 691, 697 (S.D.N.Y. 1997) (excusing technical deficiency of party's submission where

moving party failed to submit required statement together with initial moving papers, but subsequently submitted statement with their reply papers). Finally, even if defendants had not submitted the supplemental statement, the relevant facts were readily apparent from the facts section of the memorandum of law, and so plaintiff could not have been prejudiced. *Cf. Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n.2 (2d Cir. 2003) (noting that failure to comply with Local Civil Rule 56.1 was excused since the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law, to the extent that the other requirements of the rule were also met).

2. Compliance with Fed. R. Civ. P. 56(e)

Defendants argue that plaintiff's opposition papers are insufficient because they are not accompanied by exhibits and admissible evidence which demonstrate the existence of a disputed issue of material fact, pursuant to Fed. R. Civ. P. 56(e).

Rule 56(e) establishes the forms of evidence that may be used in favor or opposition to a motion for summary judgment, specifically providing that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).

Although defendants are correct to point out the fact that plaintiff's opposition does not include exhibits which demonstrate the existence of a disputed issue of material fact, the Court finds that plaintiff's opposition is sufficient because it is supported by competent, admissible evidence. Specifically, plaintiff's memorandum of law opposing summary judgment relies on facts included within exhibits attached to defendants' motion. *See U.S. Underwriters Ins. Co. v. United Pacific Associates, LLC*, No. 05-CV-1012 (JFB), 2006 WL 1329756, at *3 (E.D.N.Y. May 15, 2006) (finding opposition to summary judgment motion that solely relied on facts included within moving party's attached exhibits sufficient under Rule 56(e)); *cf. Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (allowing party opposing motion for summary judgment to rely on statements included within exhibits submitted by moving party). To the extent that plaintiff points to evidence within defendants' attached

5

exhibits which raise disputed issues of material fact, their opposition to the instant summary judgment motion is sufficient. However, where plaintiff relies solely upon denials and does not point to any admissible evidence, even within defendants' submissions, to identify disputed issues of material fact, her opposition is insufficient.

B. Claims Arising Under 42 U.S.C. § 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. For claims under § 1983, a plaintiff must prove "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted).

1. False Arrest and False Imprisonment

Defendants assert that plaintiff's claims for false arrest and false imprisonment must be dismissed, as a matter of law, because probable cause existed for plaintiff's arrest.

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y.), *cert. denied*, 423 U.S. 929 (1975) (internal citations omitted). The only element in dispute in the instant case is the last element—defendant argues that the arrest was privileged as a matter of law because it was supported by probable cause. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest"); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (holding that probable cause is a "complete defense to an action for false arrest"); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *see also Walker v. Youman*, No. 02-CV-5957 (NGG), 2006 WL 525921, at *4 (E.D.N.Y. Mar. 3, 2006) ("When a Section 1983 plaintiff is convicted after trial on the underlying charge, these facts alone provide sufficient evidence that probable cause existed

at the time of the arrest and preclude a false arrest claim under Section 1983.") (internal citation omitted).

Probable cause existed in the instant case to support plaintiff's arrest and detention because she was eventually convicted of several of the crimes for which she was arrested, and those convictions were upheld on appeal. *Cameron*, 806 F.2d at 387 ("[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."); *Broughton*, 37 N.Y.2d at 458 ("[A] conviction which survives appeal would be conclusive evidence of probable cause."). Contrary to the assertion of plaintiff, it is of no import that she was not convicted of all the crimes for which she was arrested; the existence of probable cause as a matter of law as to some of the crimes that she was charged on the day of her arrest legitimized the seizure of her person and her subsequent detention. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest.") (citing *Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588 (2004)); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI), 2005 WL 2033722, at *4 (E.D.N.Y. Aug. 23, 2005) (barring § 1983 false arrest claim where probable cause existed for arrest, as exhibited by plaintiff's conviction, and rejecting plaintiff's argument that false arrest claim could be brought regarding other charges for which he was not convicted).

The Court finds that summary judgment should be granted in favor of defendants with respect to plaintiff's false arrest and false imprisonment claims.

2. Malicious Prosecution

Defendants argue that plaintiff's claim for malicious prosecution must be dismissed because probable cause existed for plaintiff's prosecution on the resisting arrest and obstruction of governmental administration charges, both of which resulted in an acquittal.

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must demonstrate that his or her rights were violated under the Fourth Amendment, *see, e.g., Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998), and also establish the element of malicious prosecution under state law, *see, e.g., Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). *See Fulton*, 289 F.3d at 195. "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Id.*; *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).

As with the false arrest claim, defendants contend that the malicious prosecution claim is defective as a matter of law because plaintiff's later conviction demonstrated the existence of probable cause for the arrest. However, in contrast to the analysis of false arrest claims, discussed *supra*, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff.[1] *See Janetka v. Dabe*,

---

[1] Nothing in the Supreme Court decision in *Devenpeck*, which dealt only with false arrest claims, impacts the Second Circuit's precedent in

7

892 F.2d 187, 190 (2d Cir. 1989) (claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr*, 944 F.2d at 100 (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted").

In *Janetka*, the Second Circuit confronted a situation that is strikingly similar to the instant case. Specifically, in *Janetka*, the plaintiff was acquitted of resisting arrest, a misdemeanor under New York law and punishable by a maximum prison sentence of one year,[2] and convicted of disorderly conduct, a violation under New York law.[3] The district court found that since the charges "arose out of events that occurred on the same occasion," the conviction for disorderly conduct barred a malicious prosecution claim, despite the plaintiff's acquittal for resisting arrest. *See Janetka*, 892 F.2d at 189. The Second Circuit reversed, finding that the malicious prosecution claim should consider each criminal charge separately because they involved "two distinct offenses involving distinct allegations," noting that the disorderly conduct charge was directed at an unidentified civilian, whereas the resisting arrest charge was directed at the officers' attempt to arrest him, and further pointing out the fact that the elements of the charges were different, and that neither charge was a lesser-included offense of the other. *Id.* at 190. Further, the Second Circuit noted that a contrary holding would be "particularly inappropriate," where Janetka was acquitted on

---

connection with malicious prosecution claims.

[2] *See* 892 F.2d at 190; *see also* N.Y. PENAL LAW §§ 205.30, 10.00(4) (McKinney 2006).

[3] *See* 892 F.2d at 190; *see also* N.Y. PENAL LAW §§ 240.20, 240.26, 10.00(3) (McKinney 2006).

a charge more serious than the one for which he was convicted because of a risk of abuse in those circumstances:

> Allowing police officers to add unwarranted misdemeanor charges to valid violation charges may force an accused to go to trial on the misdemeanor when he otherwise would plead to the violation. If the dispositive factor is whether, as the district court held, the charge resulting in acquittal "arose out of events that occurred on the same occasion" as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity.

*Janetka*, 892 F.2d at 190.

Defendants argue that *Janetka* is distinguishable because the plaintiff in *Janetka* was only convicted of a violation and was acquitted on the more serious misdemeanor charge of resisting arrest whereas, in the instant case, plaintiff was convicted of fourth degree criminal mischief, which is a misdemeanor, *see* N.Y. PENAL LAW § 145.00. Since plaintiff's conviction was on a charge equal in weight to the misdemeanor resisting arrest charge and more serious than the obstruction of governmental administration charge, both of which resulted in acquittals, defendants assert that the "piling on" rationale of *Janetka* and its analysis are inapplicable.

However, the Court does not read *Janetka* so narrowly. The primary basis for the Second Circuit's decision in *Janetka* was the fact that the charges involved "two distinct offenses involving distinct allegations." 892 F.2d at 190. The court did note that barring

8

the malicious prosecution claim was "particularly inappropriate" where the charge resulting in acquittal was more serious than the crime of conviction, but did not suggest that such a distinction was required for a malicious prosecution claim to exist. *Id.* Thus, although the concern about abuse by the prosecution is significantly diminished where the offense of conviction is as serious as the acquitted offense, the Court must still look at the other factors including "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Pichardo v. New York Police Dep't.*, No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka*, 892 F.2d at 190).

In the instant case, *Janetka* counsels the Court to find that plaintiff may proceed on her malicious prosecution claim with respect to the resisting arrest charge because it was a distinct offense from the charges for which she was convicted. Specifically, plaintiff was convicted of harassment (relating to her conduct prior to the arrest) and criminal mischief (relating to her conduct once in the patrol car, when she kicked out the rear window). The resisting arrest charge, however, related to conduct that occurred at the time of her arrest in the residence. The elements and the alleged conduct relating to the resisting arrest are separate and distinct from the conduct underlying the criminal convictions and, thus, support the conclusion that the prosecution of the resisting arrest charge ended in plaintiff's favor.

Under similar circumstances, other courts have found no bar to a malicious prosecution claim. *See, e.g., Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 151 (N.D.N.Y. 2006) (permitting malicious prosecution claim for resisting arrest charge to proceed despite finding of probable cause as to skateboarding and unlawful possession of marijuana charges); *Kavazanjian v. Rice*, No. 03-CV-1923 (FB), 2005 WL 1377946, at *4 (E.D.N.Y. June 6, 2005) (finding malicious prosecution claim for criminal mischief charge not barred by conviction for, *inter alia*, assault, resisting arrest, and aggravated unlicensed operation of a motor vehicle); *Pichardo,* 1998 WL 812049, at *4 (holding that conviction on misdemeanor assault charge did not bar malicious prosecution claim for misdemeanor resisting arrest charge); *Sassower v. City of White Plains*, No. 89-CV-1267 (MJL), 1995 WL 222206, at *4 (S.D.N.Y. Apr. 13, 1995) (finding malicious prosecution claim for disorderly conduct charge not barred by convictions for resisting arrest and theft of services); *Graebe v. Falcetta*, 726 F. Supp. 36, 39 (E.D.N.Y. 1989) (holding that conviction for speeding did not preclude a malicious prosecution claim arising from acquittal on charges of resisting arrest and attempted escape), *aff'd mem.*, 946 F.2d 883 (2d Cir. 1991).

The Court reaches the same conclusion as to the obstruction of governmental administration charge. Although the harassment charge and obstruction charge both address the same alleged conduct prior to the arrest–namely, the alleged striking of Officer Tirelli when he was seeking to search the residence–they have differing elements and, in fact, the jury acquitted on the obstruction charge while convicting of harassment. For example, obstruction of government administration requires the jury to find a person intentionally prevented or attempted to prevent a public servant from performing an official function, whereas harassment involves an intent to harass or annoy or alarm the officer. (Jury Charge, at

9

216-17, 225-26.) Thus, although the jury, by its harassment conviction, necessarily found plainitff hit Officer Tirelli with the intent to harass, annoy, or alarm, it may have acquitted on the obstruction of governmental administration charge because it could not conclude that plaintiff's contact with the Officer was intended to obstruct the search. Moreover, not only did these charges have differing elements, but the acquitted charge of obstruction is a more serious crime (*i.e.*, a misdemeanor) than the conviction for harassment (*i.e.,* a violation).

Accordingly, the Court concludes that the obstruction of governmental administration and resisting arrest charges are not sufficiently similar to the harassment and criminal mischief charges, for which there have been convictions, to preclude a malicious prosecution claim on the acquitted charges.

In the alternative, defendants assert that they are entitled to qualified immunity with respect to the malicious prosecution claim. According to the Second Circuit, government actors may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (internal quotation marks, citation and alterations omitted). An arresting officer is entitled to qualified immunity on a claim of arrest without probable cause and of malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032 (1992).

The Court must analyze the qualified immunity issue separately with respect to each of the two charges for which plaintiff was acquitted. With respect to the obstruction of governmental administration charge, the Court finds that defendants are entitled to qualified immunity. A finding of probable cause for obstructing governmental administration, under N.Y. Penal Law § 195.05 "may be predicated upon, for example, a defendant's refusal to obey orders to leave a premises, to exit a vehicle, to 'step back' from an accident scene or to keep away from an area where a disturbance is taking place." *Wilder v. Village of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003). Although the mere existence of convictions for harassment and criminal mischief do not establish probable cause on the obstruction charge, the Court can consider the jury findings as to the conduct underlying the crimes of conviction to the extent they have relevance to the qualified immunity issue relating to the obstruction charge. Here, the harassment conviction demonstrates that there was probable cause to find that plaintiff had struck Officer Tirelli, prior to her arrest, during his attempt to search the residence. In fact, the Second Department found that the evidence of harassment at trial was sufficient beyond a reasonable doubt, including defendant's intent to harass. The conduct underlying the obstruction charge was based on the same

conduct.[4] The key distinction between the two charges was plaintiff's mental state – that is, as to the obstruction charge, the State needed to prove that plaintiff hit the officer with the intent to obstruct the search, rather than only to harass. Given probable cause existed regarding the contact with the officer and the intent to harass during the search, defendants also had, at a minimum, arguable probable cause to believe plaintiff had obstructed governmental administration in connection with the search. Therefore, defendants are entitled to qualified immunity with respect to any malicious prosecution claim relating to that charge.

The analysis with respect to the resisting arrest charge, however, is quite different. As noted *supra,* plaintiff claims that she did absolutely nothing to resist arrest. In other words, even assuming *arguendo* she pushed the officer prior to arrest as he was conducting the search, she claims she did nothing when he decided to arrest her that would support a resisting arrest charge. There is nothing about plaintiff's conduct prior to the arrest, or her conduct in the police car after the arrest, that is dispositive as a matter of law on the qualified immunity issue as it relates to what occurred in the residence at the time of arrest. Under plaintiff's account of the events, and viewing the facts in the light most favorable to plaintiff, probable cause on the resisting arrest charge was completely lacking and was fabricated.[5] Specifically, if plaintiff's claim that she did *nothing* to resist arrest is true, it would not be objectively reasonable for the defendants or any reasonable officers in their situation to believe that probable cause to prosecute plaintiff for that charge existed. Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to prosecute for resisting arrest, defendants are not entitled to

---

[4] More specifically, the harassment charge alleged that plaintiff "did push, shove, slap Police Officer Tirelli, Junior, while he attempted to pass [plaintiff] in the kitchen" and "[t]hese actions did annoy, harass, and alarm [the officer]." (Jury Charge, at 225.) The trial court instructed the jury that, as part of that harassment charge, they needed to find that plaintiff subjected Officer Tirelli to physical contact and, in so doing, did push, shove, and slap Officer Tirelli. (*Id.* at 226.) Similarly, the obstruction of governmental administration charge specifically alleged that plaintiff "did block Police Officer Tirelli's way physically, then pushed and struck him, while he attempted to retrieve several shotguns, whose use had been threatened by [plaintiff] during a Domestic Dispute." (Jury Charge, at 216.) Thus, the court instructed the jury that, in connection with the charge, they needed to find, among other things, that plaintiff "did block Police Officer Tirelli's way physically, then pushed and struck him." (*Id.* at 217.) Therefore, both charges required a finding that plaintiff had hit Officer Tirelli prior to the arrest.

[5] Defendants argue that it is uncontested that the police officers had probable cause to charge plaintiff with resisting arrest. Specifically, with respect to the charge for resisting arrest, defendants point to testimony that plaintiff resisted and struggled to be restrained after the defendant police officers informed her that she was under arrest. (*See* Biancanello Aff., Ex. G at vol 1, pp.152, 212-13, vol. 2, pp. 39, 92.) However, plaintiff clearly contests these facts. Plaintiff points to evidence in the record that, if believed, could establish that the officers did not have probable cause to prosecute plaintiff for resisting arrest. Specifically, the testimony of both plaintiff and her mother, Florence Ostroski, indicated that plaintiff did not resist arrest in any way. (*See id.* at vol 2., pp. 134-41; vol.3, pp. 92-94.) As noted above, viewing the evidence in a light most favorable to plaintiff, the Court finds that a disputed issue of fact exists as to whether probable cause existed to prosecute plaintiff for resisting arrest.

11

qualified immunity as a matter of law. *See Weyant,* 101 F.3d at 858 (holding that where police officers' version of facts is 'sharply disputed, . . . the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law"); *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (internal citations and quotation marks omitted); *see also Webster v. City of N.Y.*, 333 F. Supp. 2d 184, 206 (S.D.N.Y. 2004) (denying qualified immunity as a matter of law for malicious prosecution claim where dispute existed as to facts which constituted alleged basis for probable cause).

Finally, defendants argue that they should be granted summary judgment on the malicious prosecution claim because plaintiff has not proffered any evidence that the prosecution was instituted or maintained against her with malice. The Court disagrees because, here, a jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment. *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause–while not dispositive–tends to show that the accuser did not believe in the guilty of the accused, and malice may be inferred from the lack of probable cause.") (citation and internal quotation marks omitted); *Mesiti v. Wegman*, 307 A.D.2d 339, 341 (2d Dep't 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.") (citing *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (N.Y. 1977)).

In sum, the Court finds that summary judgment should be denied with respect to plaintiff's malicious prosecution claim. However, the jury may only consider the malicious prosecution claim with regard to plaintiff's prosecution for the criminal charge of resisting arrest, and not obstruction of governmental administration.

### 3. Abuse of Process

Defendants seek dismissal of plaintiff's abuse of process claim. Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *see also DeVito*, 2005 WL 2033722, at *10 (same); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00-CV-9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.")

Nevertheless, the Court also considers the substance of plaintiff's claim for abuse of process, and finds it to be without merit. In order to establish liability for malicious abuse of process under § 1983, a plaintiff must establish the claim's elements under state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act; (2) with the intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80). Plaintiff's abuse of process claim fails because there is no evidence in the record that defendants aimed to achieve an objective other than plaintiff's prosecution and conviction. *Savino*, 331 F.3d at 77 ("[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."); *Pierre-Antoine v. City of New York,* 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) (dismissing plaintiffs' abuse of process claim based on failure to allege or provide evidence of collateral purpose outside legitimate ends of the process); *see also Brewster v. Nassau County*, 349 F. Supp. 2d 540, 550 (E.D.N.Y. 2004) (same); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (N.Y. 1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process.").[6] Accordingly, as to the merits, summary judgment in defendants' favor on the abuse of process claim is warranted.

### 4. Excessive Force

Defendants claim that plaintiff's excessive force claim should be dismissed on summary judgment.

To survive summary judgment on an excessive force claim, a plaintiff must demonstrate the force used in her arrest was "excessive" under the Fourth Amendment. *See Smith v. P.O. Canine Dog Chas*, No. 02-CV-6240 (KMW), 2004 WL 2202564, at *13 (S.D.N.Y. Sep. 28, 2004). A police officers' application of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397

---

[6] At oral argument, counsel for plaintiff suggested that the defendant officers may have had the improper objective of attempting to deter plaintiff from filing a civil rights lawsuit. Although this would constitute a proper collateral objective and pleading such might allow a plaintiff to survive a motion to dismiss, plaintiff has failed to point to any evidence in the record that supports this theory of collateral objective for the purposes of the instant summary judgment motion. *Anderson*, 477 U.S. at 256 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); FED. R. CIV. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

13

(1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotation marks omitted). Sometimes physical coercion is necessary when effectuating arrests, and thus "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

Defendants have failed to demonstrate the absence of a material fact with respect to plaintiff's excessive force claim. Defendants argue that the force employed was objectively reasonable as a matter of law, based upon evidence in the record that indicated that the plaintiff resisted arrest. (*See* Biancanello Aff., Ex. G at vol. 1., pp. 152, 213-14; vol. 2, pp. 92-93.)[7] However, as plaintiff indicates, counsel testimony exists in the record that, if believed, indicates that: (1) the defendant officers initiated the use of force against plaintiff before she started to resist arrest; and (2) plaintiff did not arrest and defendant officers continued to use force against the plaintiff, even after she was subdued on the ground. (*See id.,* Ex. G at vol. 2, pp. 139-43; vol. 3, pp. 92-94.) Specifically, Florence Ostroski testified at trial that an officer struck plaintiff first, following her protestations regarding the officers going upstairs to retrieve the guns without a warrant. (*See id.,* Ex. G at vol. 2, pp. 139-40.) Further, Florence Ostroski testified that, after the defendant officers had subdued and handcuffed plaintiff, they kicked her, kneed her in the back, punched her in the back of the head and twisted her neck. (*See id.,* Ex. G at vol. 2, pp.141-43.) Plaintiff also testified that the officers lunged at her first, and kicked her and twisted her neck after she had been handcuffed. (*See id.,* Ex. G. at vol. 3, pp. 92-94.) If the accounts of plaintiff and Florence Ostroski are credited, the Court cannot hold that the conduct of the defendant officers constituted an objectively reasonable use of force as a matter of law. *See, e.g., Pierre-Antoine*, 2006 WL 1292076, at *4 (holding that repeatedly striking a subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); *Graham v. Springer,* No. 03-CV-6190 (CJS), 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (denying summary judgment on excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs); *Jones v. Ford*, No. 00-CV-0934, 2002 WL 1009733, at *4 (M.D.N.C. Feb. 15, 2002) ("If Defendant . . . did in fact kick

---

[7] Even if defendants' account of the events is true, the fact that plaintiff may have struck the officers or resisted arrest, standing alone, does not entitle them to judgment as a matter of law because any implemented force must be reasonably related to the level of resistance. *Sullivan*, 225 F.3d at 166 ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."). In fact, a plaintiff may sustain a claim for excessive force under §

1983 despite being convicted for resisting arrest or assault. *See id.*

Plaintiff several times while he was on the ground handcuffed, such acts could constitute excessive force in violation of the Fourth Amendment.") (citing *Hafner v. Brown*, 983 F.2d 570 (4th Cir. 1992)).

Alternatively, defendants argue that plaintiff's excessive force claim is without merit because of the limited nature of plaintiff's alleged injuries, consisting solely of neck and back complaints. *See, e.g., Johnson v. Police Officer #17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries). Although the extent of a plaintiff's injuries is relevant, a plaintiff need not sustain serious injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987)); *Robison,* 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Although a jury may consider the lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against the testimony of plaintiff and her mother, it does not entitle defendants to judgment as a matter of law because the Court must view the evidence in the light most favorable to plaintiff. *See Pierre-Antoine*, 2006 WL 1292076, at *5 (noting that although the lack of severe injury may be considered by a jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law).

Finally, the defendant officers argue that they are entitled to qualified immunity, even if the use of force was objectively unreasonable under the Fourth Amendment. The Court rejects this assertion–viewing the evidence in a light most favorable to plaintiff, a reasonable officer should have known that repeatedly striking a subdued suspect violates a clearly established constitutional right not to be subjected to excessive force during arrest. *See Pierre-Antoine*, 2006 WL 1292076, at *6 (holding that a reasonable officer would have known that repeatedly punching, kicking and stomping a subdued individual violated the clearly established constitutional right not to be subjected to excessive force during arrest) (citing *Maxwell*, 380 F.3d at 108); *see also Phelps v. City of Indianapolis*, No. 02-CV-1912, 2004 WL 1146489, at *1 (S.D. Ind. May 10, 2004) (holding that "repeated and unnecessary kicks and blows to complaint suspects lying on the ground in handcuffs" would constitute "violations of clearly established constitutional law."); *see also Smith v. Fields*, No. 95-CV-8374, 2002 WL 342620, at *7 (S.D.N.Y. Mar. 4, 2002) ("[O]nce the Plaintiff was pulled out of the car, taken to the ground, and handcuffed, the kicks and slaps that Officer Anthony allegedly delivered to the Plaintiff's head and body, absent any contemporaneous resistence, was objectively unreasonable."). If the jury determines that the plaintiff's account of the events is accurate, this case does not involve "the hazy border between excessive and acceptable force," *Saucier v. Katz*, 533 U.S. 194, 206 (2001), but the violation of a clearly established right for which qualified immunity is unavailable.

The Court finds that summary judgment should be denied with respect to plaintiff's excessive force claim under the Fourth Amendment.

### 5. Unreasonable Search and Seizure

Defendants argue that plaintiff's § 1983 claim alleging an unreasonable search and seizure under the Fourth Amendment must be dismissed because consent to search the premises and seize the weapons was obtained from the premises' owner, Florence Ostroski. In response to defendants' arguments, plaintiff only argues that the search and seizure was unreasonable because plaintiff, not Florence Ostroski, is the owner of the seized weapons.

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. CONST. AMEND. IV. "A warrantless search is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1995) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). An exception for warrantless entry exists where the authorities have obtained the voluntary consent of a person authorized to grant such consent. *Koch v. Town of Brattleboro, Vt.,* 287 F.3d 162, 167 (2d Cir. 2002) ("A search conducted pursuant to consent by an authorized third party does not require probable cause or a warrant.") (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988 (1974)); *see also Elliot*, 50 F.3d at 185 (citing *Schneckloth*, 412 U.S. at 222). In the instant case, plaintiff does not contest the fact that Florence Ostroski was the owner of the premises. (*See* Plaintiff's 56.1 Statement, ¶ 5.) Defendants point to uncontested evidence in the record indicating that Florence Ostroski specifically requested that the officers seize and remove the guns. (*See* Biancanello Aff., Ex. G. at vol. 1., p. 150, 172; vol. 2, p. 38.) It was reasonable for the defendant officers to believe that Florence Ostroski had the authority to consent to a search of the upstairs to retrieve the guns, based upon the fact that they knew that she was the owner of the house, and since she had access to the area search, as exhibited by her knowledge of the location of the weapons. *See United States v. Perez*, 948 F. Supp. 1191, 1201 (S.D.N.Y. 1996) (finding it reasonable for agents to assume that owner of apartment had authority to grant consent to search adult tenant's unlocked bedroom). Although plaintiff asserts that she was the owner of the guns,[8] Florence Ostroski signed the receipts regarding the seized weapons, and so the defendant officers reasonably believed that she was permitting them to seize the guns. *See Perez*, 948 F. Supp. at 1201 (finding seizure of items reasonable, where owner of house displayed apparent authority to authorize seizure by signing receipts). Since the defendant officers had the reasonable belief that they had obtained sufficient consent for the search and seizure of the guns, they are at the very least entitled to qualified immunity on this claim. *See, e.g. Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 61 (2d Cir. 2003) (holding that officers were entitled to qualified immunity where defendant officers could have reasonably believed that they were given sufficient third party consent to search); *see also Simms v. Village of Albion, N.Y.,*115 F.3d 1098, 1109 (2d Cir. 1997) (holding that defendant officers were entitled to qualified immunity as a matter of law where they relied upon consent of property owner to perform search).

Alternatively, the search and seizure was reasonable under the emergency aid doctrine because the officers reasonably believed that it was necessary to protect the occupants of the residence from imminent injury. *Brigham City, Utah v. Stuart*, ___ U.S. ___, 2006 WL 1374566, at *4 (2006) ("[L]aw enforcement

---

[8] *See* Biancanello Aff., Ex. G., at vol. 3, p. 92.

officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."). The defendant officers had been alerted that plaintiff and her brother were involved in a heated domestic dispute, and that a firearm was located on the premises. Their decision to find and secure the weapons was reasonable to prevent harm to the occupants that might have ensued once the defendant officers departed, particularly in light of the request for that action to be executed by the premises' owner. The record supports the contention that the defendant officers' actions were for the purpose of securing safety, and not for collecting evidence, as the officers' search and seizure was limited to obtaining the guns of which they were informed. The judge presiding over plaintiff's criminal trial found the search and seizure reasonable on that basis,[9] which demonstrates that the defendant officers acted reasonably enough such that they are at the very least entitled to qualified immunity on the plaintiff's search and seizure claim.

In sum, the Court finds that summary judgment should be granted in favor of defendants with respect to plaintiff's claim of unreasonable search and seizure under the Fourth Amendment.

### 6. Equal Protection

Defendants seek dismissal of plaintiff's equal protection claim. Plaintiff did not oppose the motion for summary judgment on this claim, and conceded at oral argument that she was abandoning the claim. In any event, no evidence exists in the record to support such a claim in the instant case.[10] Consequently, the Court finds that summary judgment should be granted in favor of defendants with respect to plaintiff's equal protection claim.

### 7. Municipal Liability

It is well-settled that municipalities may not be liable under § 1983 for constitutional torts committed by its employees under a *respondeat superior* theory; rather, to prevail against a municipality, a plaintiff must demonstrate that his or her injury resulted from a municipal policy, custom, or practice. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Defendants argue that summary judgment should be granted in their favor because

---

[9] *See* Biancanello Aff., Ex. G., at vol. 3, p. 190.

[10] Plaintiff alleges in her complaint that defendants discriminated against her because of her gender and sexual orientation. (See Compl. ¶ 31(d).) However, the claim is deficient because the plaintiff has failed to allege or show that she was treated differently than others similarly situated, nor did she proffer any other evidence of discrimination. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (stating that in order to establish an equal protection violation under § 1983, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently."); *see also DeVito*, 2005 WL 2033722, at *6 (dismissing § 1983 equal protection claim based upon, *inter alia*, a failure to allege that plaintiff was treated differently than others similarly situated); *Caracciola v. City of New York*, 1999 WL 144481, at *6 ("To put flesh upon the bare bones of [their] theory, [plaintiffs'] obligation [is] to identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently.") (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)).

plaintiff lacks evidence that the alleged unconstitutional acts of the defendant officers were the product of an official policy or custom. In response, plaintiff asserts that she has sufficient evidence from which a jury could reasonably imply the existence of a policy or custom, by obliquely referencing "a multitude of police brutality cases brought against the Town of Southold." Although "municipal inaction such as the persistent failure to discipline subordinates who violate persons' civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct," *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), the evidence pointed to by plaintiff is insufficient to allow such an inference. As a threshold matter, plaintiff's counsel has failed to specifically inform the Court of the specific excessive force lawsuits against the Town of Southold to which he refers. *Clerical Apparel of N.Y., Inc. v. Valley Forge Ins. Co.*, 209 F.R.D. 316, 319-20 (E.D.N.Y. 2002) ("[A]n affidavit filed by 'the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.'") (quoting *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983)). Moreover, assuming *arguendo* that such lawsuits exist, the mere fact that a number of lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality ignored such complaints such that it constituted deliberate indifference to any potential problem of excessive force, does not assist a fact-finder in determining whether the Town of Southold actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties. *See, e.g., Johnson v. City of Nashua*, No. 01-CV-165 (B), 2002 WL 1349515, at *6 (D.N.H. June 19, 2002) (granting summary judgment, dismissing § 1983 municipal liability claim, finding that evidence of the filing of three lawsuits against a particular officer without further detail could not support conclusion that municipality's response to the lawsuits was constitutionally deficient); *Amann v. Prince George's County, Maryland*, No. 99-CV-3759 (DKC), 2001 WL 706031, at *2 (D. Md. Jun. 15, 2001) (dismissing municipal liability claim based on finding that complaints filed in two lawsuits against particular officer constituted "mere allegations rather than notice of actual unconstitutional behavior"); *Peters v. City of Biloxi, Miss.*, 57 F. Supp. 2d 366, 378 (S.D. Miss. 1999) (stating that "mere fact that other lawsuits have been filed against the [defendant municipality] does not provide a basis for municipal liability"); *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 311 (S.D.N.Y. 1998) ("The mere fact of other lawsuits against the City does not provide a basis for liability.") (citing *Mendoza v. City of Rome*, 872 F. Supp. 1110, 1118 (N.D.N.Y. 1994) ("claims . . . filed against the City, standing alone, do[ ] not establish a pattern, policy, or practice which [is] causally related to the . . . use of excessive force upon the plaintiff"); *cf. Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986) ("evidence that a number of claims of police brutality had been made by other persons against the City, *together* with evidence as to the City's treatment of these claims, [is] relevant") (emphasis added).[11]

---

[11] At oral argument, counsel for plaintiff conceded that the record was bereft of evidence indicating a municipal policy or custom to support the municipal liability claim, and requested leave from the Court to conduct additional discovery regarding this issue. The Court requested that plaintiff file a letter within a week of oral argument to provide the Court with good cause and legal justification for reopening discovery to

Consequently, the Court finds that the municipal liability claim should be dismissed because plaintiff has failed to adduce any evidence that the alleged unconstitutional acts committed by the defendant officers were connected to any policy, custom or practice beyond mere speculation and conjecture. *See, e.g., Prowiser v. Bon-Ton, Inc.*, No. 05-CV-0166 (WCC), 2006 WL 897197, at *6 (S.D.N.Y. Apr. 6, 2006) ("The doctrine of *respondeat superior* is insufficient to support a claim against a municipal employer, as are conclusory assertions of a custom or policy in the absence of factual allegations or inferences.") (citing *Zahra,* 48 F.3d at 678); *see also Young v. County of Fulton*, 999 F. Supp. 282, 285-86 (N.D.N.Y.), *aff'd* 160 F.3d 899 (2d Cir. 1998) (granting summary judgment, dismissing municipal liability claim under § 1983 because plaintiffs relied solely on conjecture and hyperbole to indicate a custom or practice on the part of the defendants); *Roberts by Roberts v. City of New York*, 753 F. Supp. 480, 485 (S.D.N.Y. 1990) (same).

### C. State Law Claims

Defendants also move for dismissal for the claims brought by plaintiff arising under New York law. The Court grants summary judgment, dismissing plaintiff's state law claims alleging false arrest, false imprisonment and abuse of process for the same reasons that they were dismissed under § 1983.[12] Similarly, the Court denies summary judgment as to plaintiff's state law claim alleging malicious prosecution for the same reasons that summary judgment was denied as to that claim under § 1983. Further, the Court denies summary judgment as to plaintiff's claims for assault and battery, as these claims parallel plaintiff's excessive force claims and involve disputed issues of material fact. *Pierre-Antoine*, 2006 WL 1292076, at *8 ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.") (internal citations and quotation omitted); *see also DeVito*, 2005 WL 2033722, at *7 (denying summary judgment to state law assault and battery claims based on prior determination that summary judgment should be denied as to plaintiff's § 1983 excessive force claim).

### IV. CONCLUSION

In sum, based on the foregoing, the following claims against the defendant officers remain in this case: (1) malicious prosecution under § 1983 and New York state law;[13] (2) excessive force under § 1983; and

---

allow them to gather evidence regarding this issue, over two years after discovery has been closed. Because plaintiff failed to provide the Court with such a letter, the application to reopen discovery is denied.

[12] As discussed *supra*, the Court's analysis of plaintiff's § 1983 claims for false arrest, false imprisonment, abuse of process and malicious prosecution were dependent on the definition of those claims under New York state law. *See Cook,* 41 F.3d at 79, 80 (stating that § 1983 claims for abuse of process and malicious prosecution are analyzed using the elements of state law); *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law.").

[13] As discussed *supra*, plaintiff may only proceed with her malicious prosecution claim as it relates to her prosecution for resisting arrest.

19

(3) assault and battery claims under New York state law. Summary judgment is granted to defendants on all other remaining claims. Since the Court grants summary judgment in favor of defendants on their § 1983 claim alleging municipal liability, the Clerk of the Court shall terminate the Town of Southold as a party in this case.

        SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 21, 2006
Central Islip, New York

        \* \* \*

The attorney for plaintiff is Thomas F. Liotti, Esq., 600 Old Country Road, Suite 530, Garden City, New York 11530. The attorneys for defendants are Dominic P. Bianco, Esq., and Michael P. Biancanello, Esq. of Gallagher, Walker, Bianco and Platsaras, Esqs., 98 Willis Avenue, Mineola, New York 11501.